· SAMUEL BEAR, Sr. v. W. H. HARRIS, et al.

*Action for Damages—Trespass—Evidence—Defense.*

1. Where defendant purchased the cargo of a schooner moored to a wharf, with the privilege of removing the cargo within thirty days, and during that time and without the permission of the owner of the schooner, removed the boat to a more convenient place for unloading, where it was damaged by a storm ; *Held*, that the defendant was a trespasser *ab initio* and liable for the resulting damages.

2. In such case the fact that, if the schooner had remained at the wharf, it might have been endamaged by the storm as much as or more than it was at the place to which it was removed, is no defense.

This was a CIVIL ACTION, tried before *Hoke, Judge,* and a jury, at January Term, 1895, of Superior Court of NEW HANOVER County.

There were two causes of action set out in the complaint —one for trespass for wrongful removal, and the second of negligence in case the removal turned out to be by authority and permission. The court instructed the jury that if they should find the issues on the first cause of action for plaintiff and assess the entire damage done to the vessel, they should not respond to issue on second cause of action, and to this there was no exception by

either party.   There was evidence to show that the vessel being the schooner "Enchantress," having on board a cargo of cross-ties, was wrecked and had been towed into the harbor of the city of Wilmington, made fast to a wharf, and then having been declared a total constructive wreck, was sold by the order of the underwriters, and her cargo was sold at same time.   The cargo was sold first and bought by the defendants, being the cross-ties then on the vessel.   The vessel was then sold and bought by the plaintiff, the bill-of-sale for vessel stipulating that the sale was subject to terms sale cargo.

The evidence of plaintiff being that of the auctioneer, the bill-book and other evidence, tended to show that by the terms sale cargo it was declared that the purchaser of the cross-ties on deck was to have ten days in which to remove them, and the purchaser of those in the hold was to have thirty days in which to remove them, and that no other terms were made.   That the vessel was then sold with the simple announcement that same was sold for cash, subject to terms sale cargo.

The evidence of defendant tended to show that there was an additional announcement at sale cargo.   That the purchaser could take the vessel to any point that was safe, in the harbor of the city of Wilmington, for the purpose of unloading cross-ties.   The defendants further offered evidence tending to show that plaintiff had given them permission, after the sale, to remove the vessel to another point, for the purpose of unloading.

Plaintiff testified and denied that any such permission was ever given by him.

It was proved that the vessel was taken by defendants from the point where she was placed when sold, to a point a mile and a half down the river, where she was beached and partially unloaded of her cargo.

The evidence of plaintiff tended to show that this was without his permission, and unnecessary and unwarranted. That the vessel could have been unloaded where she was with perfect safety and just as cheaply. That she was not very badly injured, and that by removal she· was carried down the river to a more exposed position. That she was run up in a beach 25 yards from shore, and that though she had two anchors on board neither was put out nor was she fastened to shore. That, by reason of the exposure and failure of defendant to secure her properly, she was blown over by the winds or turned over by another floating vessel, sinking her, having been blown against her in a storm, and the " Enchantress " had thereby become greatly injured and almost worthless, to his damage one thousand dollars.

The defendant offered evidence tending to prove that the vessel was worthless anyway, and was the worst wreck ever seen in Cape Fear River. That at the point where she was sold she could not be gotten close up to the wharf, and she was lying in 18 or 20 feet of water, and was only kept afloat by her cargo of cross-ties, and was in a sinking condition. That she could not have been unloaded where she was, but it was necessary to beach her to unload her properly. And that, as a matter of fact, she was taken by them to a point two miles down the river, where she was beached and put in a safe and better place than at the wharf where she was sold. That the storm which injured her was one of the severest ever known in the river, and was more likely to have injured her at point where she was sold than where defendant had placed her. That she was beached in the ordinary and usual way, and was safe from all ordinary storms. That it was not usual to place out anchors from a vessel beached as this one was. The defendant however testified that if she had been properly fastened with an anchor to the shore she would not have

been likely to turn over. And same witness further testified that if she had sunk up at wharf she could have been raised more cheaply ; that she could be righted where she was now turned over.

The defendant contended before the jury that this contract gave them the right to remove vessel, and maintained before court that in sale of cargo there was an implied condition that they might remove vessel to a more suitable place for unloading.

The court charged the jury on that issue that if they were satisfied by the greater weight of the evidence that the terms of sale were as claimed by plaintiff, and plaintiff had never given defendant any permission to remove the vessel down the river a mile and a half, causing pecuniary injury to her, they should answer issue " Yes."

But, if by the terms of sale the purchasers of the cargo were given the right to move vessel to another point in the harbor for the purpose of unloading, this would give defendant a contract right to remove cargo after sale, as if plaintiff had given defendants permission to remove the vessel. In either event, the defendants would not be trespassers, and the jury should answer the issue " No."

Defendant excepted to failure of court to give the following instructions :

" Vessel was sold subject to right of owners of cargo to take it out in 30 days. Possession of vessel was of course necessary to get out cargo. Owners of cargo (within the time) had the right to use her and manage her so as to get out cargo, using reasonable care and diligence in preserving and protecting the vessel.

" They had the right to move her from the place where she was at the time of the sale, if by doing so there was no good reason to believe that removal would put her in more danger.

BEAR *v.* HARRIS.

" The owner of cargo had the right to move her to another wharf or better place for purpose of taking out cargo.

" According to plaintiff's testimony, defendants had right to remove vessel if they exercised due care.

" The right to remove cargo included the right to remove vessel, provided ordinary care was used."

There was verdict for the plaintiff and the defendants appealed from the judgment thereon, assigning as error the instructions given and the refusal to give those requested by the defendants.

*Mr. George Rountree*, for· plaintiff.

*Messrs. D. L. Russell* and *E. K. Bryan*, for defendants (appellants).

FAIRCLOTH, C. J.: The cargo of the schooner in question was sold at public sale, and the terms were that the purchaser was to have thirty days to remove it, and there were no other terms. The schooner, then fast to the wharf in Wilmington, was sold to the plaintiff subject to the terms of the sale of the cargo. The defendant, purchaser of the cargo, without plaintiff's permission, removed the schooner one or two miles down the river for the purpose of unloading, and she was caught in a storm and damaged.

Defendant insists that by the terms of the sale he had the implied right to remove the boat to a more convenient place for unloading, and his Honor told the jury if they believed that he removed the boat for such purpose without plaintiff's permission, he was liable for the damages. In this we see no error. The right to enter the boat at the wharf within thirty days and remove the cargo was not an implied license to remove the schooner to another place for convenience and unload. It was not a necessity, but was the abuse of a legal license, and made the defend-

ant a trespasser *ab initio*.   The argument was made that if the schooner had remained at the wharf the damage would have been as great or greater by reason of the storm. *Non constat* that such would have been the result, and there is no evidence that it *must* have happened.   The defendant cannot qualify his wrong in that way and insist on the *possibility* of a loss if he had not exceeded his privilege.   *Davis* v. *Garrett*, 6 Bing., 716 ; *Gardner* v. *Rowland*, 2 Ired., 247.   In the latter case the defendant under a license to enter the plaintiff's enclosed lands to remove some corn, instead of entering at the gate as advised to do, for his own convenience entered at another place by pulling down the fence.   This was held to be illegal, as it was unreasonable to presume a more extensive license than was essential to the enjoyment of what was expressly granted.

No Error.